## ABRAHAM v. MEYERS, Comptroller, et al.

(Supreme Court, Special Term, New York County. January, 1893.)

1. INJUNCTION PENDENTE LITE—WHEN DENIED.
   An injunction pendente lite will be denied where great injury would result to defendant from granting it, while no irreparable injury would result to plaintiff from its refusal.

2. STREET RAILROADS—SALE OF FRANCHISE—CONSENT OF ALDERMEN.
   Under Laws 1890, c. 565, providing that the board of aldermen may consent to the sale of a street railroad franchise, where application in writing and certain publications have been made, the consent is not vitiated by the fact that the entire board was not present at the hearing on the application, but only the committee of the board to which the application had been referred.

3. SAME—PUBLISHING RESOLUTION.

    The consent of the board of aldermen to a sale of a street railroad franchise is not an alienation or appropriation of property of the city, within the consolidation act, (Laws 1882, c. 410,) § 80, providing that no resolution or ordinance shall be adopted, respecting the alienation or appropriation of property of the city, until an abstract thereof has been published.

4. SAME—REASONABLE CONDITIONS.

    It is a reasonable condition, on consenting to the sale of the franchise of a street railroad, for the board of aldermen to require the purchaser to deposit half of the amount necessary to complete the road, and that, if it is not completed in two years, the unexpended portion of the deposit shall be forfeited.

Action by Philip Abraham, as a taxpayer, against Theodore W. Meyers, comptroller of the city of New York, and others, to enjoin the sale of the franchise of the Houston, West Street & Pavonia Ferry Railroad Company. Plaintiff moves for an injunction pendente lite. Motion denied.

George Hoadly, William C. Trull, and Edward Lauterbach, (William H. Page, Jr., of counsel,) for plaintiff.

Elihu Root, Jefferson Chandler, and Francis Lynde Stetson, (Bangs, Stetson, Tracy & MacVeagh, of counsel,) for defendants.

BARRETT, J. An injunction pendente lite should only be granted, in a case like the present, where the plaintiff clearly shows that the official action complained of was illegal. Great injury would here result to the defendant corporation from the granting of such an injunction, while no irreparable injury would result to the plaintiff, or the taxpayers generally, from its refusal. The injunction sought pendente lite is precisely the same as the injunction prayed for in the complaint. The plaintiff thus asks us, on motion, to give him the equivalent of final judgment upon a trial of the action. It is plain that, if his charges of illegality are sustained upon the trial, the taxpayers will lose nothing by the proposed sale. If, on the other hand, they are not sustained, the defendant corporation will lose all that it has thus far attained by the proceeding in question, and will be compelled to proceed de novo. These considerations are conclusive against the present application, for it is entirely clear that such a case of illegal official action as would justify the sweeping injunction asked has not been made out. It would not be just, however, to stop here. The merits were fully argued, and the parties are entitled to some expression of opinion with regard to the various objections made by the plaintiff to the procedure in question. These objections will therefore be briefly considered.

The consent of the board of aldermen was not, in my judgment, vitiated by the fact that a committee of the board to whom the petition of the defendant corporation had been referred was alone present at the time and place specified in the notice for the first consideration of the matter. There is nothing in the railroad act requiring the full board to sit for the purposes of a public hearing. It was usual and proper to depute the latter function to a commit-

tee, upon whose report the board could act advisedly. The consideration which the act contemplates from the board was the consideration of a deliberative body, and its action was subject to the ordinary veto power of the mayor with respect to ordinances. The statutory prerequisites to the giving of such consent are—First, an application therefor, in writing; and, second, before acting upon such application, the publications provided for in section 92 of the railroad law, (Laws 1890, c. 565.) The application in writing was here made; and due public notice followed. Power to give the consent, upon proper conditions, then became complete, and the board could thereafter exercise the power upon such consideration as it deemed suitable and sufficient.

There is less force in the objection that the resolution of the board should have been published pursuant to section 80 of the consolidation act.[1] That provision is inapplicable to the consent of the local authorities required by the constitution and the law. This consent is in no just or legal sense an alienation or appropriation of the property of the city, and the objection on that head proceeds upon a misconception of the precise nature of the board's power, and of its action under the power. The section in question plainly refers to property owned by the city, and within its power of disposition. Here the city has the fee of the street, but such fee is in trust for street uses by the people of the state. The city cannot alien its title to the streets, or dispose of its technical property therein. The franchise proceeds from the state, and the consent of the local authorities is simply to a form of street use.

The numerous objections made to the conditions imposed by the board are, in the main, answered by the proposition that the local authorities are not confined to the conditions required by the railroad act. These conditions must be imposed, but others may be added. The only limitation upon the power to affix further conditions is that such conditions shall not contravene the statute, nor

---

[1] Laws 1882, c. 410, (Consolidation Act, § 80,) is as follows: "Immediately after the adjournment of each meeting of the board of aldermen, it shall be the duty of the clerk to prepare a brief extract—omitting all technical and formal details—of all resolutions and ordinances introduced or passed, and of all recommendations of committees, and of all final proceedings, as well as full copies of all messages from the mayor, and all reports of department of officers. He shall at once transmit the same to the person appointed to supervise the publication of the city record. No resolution or ordinance providing for or contemplating the alienation or appropriation or leasing any property of the city, terminating in the lease of any property or franchise belonging to the city, or the making of any specific improvement, or the appropriation or expenditure of public moneys, or authorizing the incurring of any expense, or the taxing or assessing of property in the city, shall be passed or adopted by the board until at least five days after such abstract of its provisions shall have been published. No such ordinance or resolution shall be approved by the mayor until three days after such abstract shall have been so published after its passage; but, if an abstract of any resolution or ordinance shall have been once published after its introduction, it shall not thereafter be necessary to publish the same again, but only to refer to the date and page of the former in the city record, and to state the amendments, if any, made thereto. In all cases the yeas and nays upon the final passage of the resolution or ordinance shall be published."

relate to matters over which other bodies have complete control. This is another way of saying that the conditions must be reasonable and lawful. The board had a right to give or to withhold its consent. It could lawfully say that it would give its consent to a road to be operated in a particular manner. That was not an attempt to exercise power as to the motor. It simply left the applicant to procure, as best it might, the means called for by the condition. So as to the condition requiring the deposit of $1,000,000, subject to draft for the construction of the railroad. The court cannot condemn this condition as unreasonable. On the contrary, it seems to be a prudent requirement to insure the activity in the construction of the road, and to prevent sham bids in the interest of those who may be inimical to the extension. The criticism upon the form of the resolution in this particular is somewhat superficial. The condition does not in reality require the completion of the road before the expiration of the statutory period of three years. It merely provides that, if the road is not completed within two years, so much of the deposit as may then be unexpended shall be forfeited. That is but one way of requiring the expenditure of the entire deposit within the two years; and, as the extension will cost at least $2,000,000, it was not unreasonable, in this manner, to compel the expenditure of one half of that sum within two thirds of the statutory period. Such is the real meaning and effect of the condition, and all that is contemplated. The only condition which calls for further consideration is that with regard to the division of the single fare. No definite opinion need now be expressed on that head. The question was argued with great ability on both sides, and the conclusion I have arrived at is that the alleged illegality in that regard is by no means so clear as to justify the practical destruction, by a preliminary injunction, of the entire procedure looking to the sale of the franchise. I do not, however, mean to intimate an impression against this condition, but merely to say that, because of the ground I have had to go over, and the limited time afforded me for reflection, my mind is not sufficiently clear with regard to it to assert its lawfulness as decidedly as I have with regard to the other conditions. Upon the merits, therefore, as well as upon the principle governing injunctions pendente lite, the motion should be denied, with costs.